UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

```
_____
                               )
TSL TRANSPORT SOLUTIONS, INC.  )
      Plaintiff,               )
                               )
          v.                   )        CIVIL ACTION
                               )        NO. 3:17-02158-WGY
JOSE A. CRUZ,                  )
CARLOS BARADA-FERNANDEZ,       )
ARMANDO JULIA-DIAZ,            )
MULTINATIONAL INSURANCE COMPANY, )
MAPFRE-PRAICO INSURANCE COMPANY, )
      Defendants.              )
_____)
```

YOUNG, D.J.[1]                                FEBRUARY 9, 2021

**FINDINGS OF FACT AND RULINGS OF LAW**

I.   **INTRODUCTION**

This case calls upon this Court sitting in diversity to
predict the direction of Puerto Rico law on the issue whether an
insurer must demonstrate prejudice under voluntary payment
insurance policy provisions before it may avoid coverage.  This
Court predicts that the Puerto Rico Supreme Court would indeed
interpret Puerto Rico law to impose such a requirement with the
burden placed squarely upon the insurer to demonstrate
prejudice.  Here, on the record before this Court and for the
reasons stated below, the insured is entitled to coverage under
an umbrella policy absent prejudice shown, and it is not

---

[1] Of the District of Massachusetts, sitting by designation.

entitled to coverage on an underlying commercial general
liability policy.

## II.  PROCEDURAL HISTORY

On November 16, 2020, the Court held a hearing on the
defendant MAPFRE-PRAICO Insurance Company's ("MAPFRE") motion
for summary judgment and supplemental motion for summary
judgment.  Mot. Summ. J., ECF No. 38 ("the Motion" or "Mot.")
and Suppl. Mot. Summ. J., ECF No. 42 ("the Supplemental Motion"
or "Suppl. Mot.").  At the hearing, counsel for the plaintiff
TSL Transport Solutions, Inc. ("TSL") and MAPFRE consented to
submitting the issue of coverage under TSL's Complaint's Third
Cause of Action (Declaratory Judgment, Specific Performance and
Breach of Insurance Contract), Compl. ¶¶ 7.1 - 7.44, ECF No. 1,
on a stipulated record -- akin to a case stated -- reserving all
other issues, including bad faith.  As this Court has recently
explained, "[c]ase stated hearings provide an efficacious
procedural alternative to cross motions for summary judgment."
Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 198 (D. Mass. 2020)
(quoting Sawyer v. United States, 76 F. Supp. 3d 353, 356 (D.
Mass. 2015)).  "In a case stated decision the parties waive
trial and present the case to the court on the undisputed facts
in the pre-trial record.  The court is then entitled to engage

in a certain amount of factfinding, including the drawing of inferences." <u>Id.</u> (citations and quotations omitted).[2]

Included and considered as part of the stipulated record before the Court, as indicated more specifically in these Findings of Fact and Rulings of Law, are MAPFRE's Statements of Uncontested Material Fact, ECF Nos. 39 and 42-1 (MAPFRE SOF and Suppl. SOF, respectively), TSL's opposition to the Mot. and Suppl. Mot., Pl.'s Opp'n Mots. Summ. J., ECF No. 54 ("the Opposition" or "Opp'n"), and TSL's Statement of Material Facts in Opposition to MAPFRE's Statement of Facts, ECF No. 53 ("TSL Opp'n SOF"), which includes four additional facts ("TSL SAUF").[3] The Court also considers MAPFRE's letters denying coverage, ECF Nos. 77-1 and 77-2 (English translations), as part of the record.

## III. FINDINGS OF FACT

### A.  The Relevant Parties to the MAPFRE Insurance Coverage Claim[4]

TSL provided merchandise transportation services to Costco Wholesale Corporation ("COSTCO") under a transportation services contract at the time relevant to this action.  TSL SAUF ¶ 1;

_____

[2] TSL and MAPFRE were offered the opportunity to supplement the record and argue at a later date, but chose to proceed on the record before the Court.

[3] The Court notes that only facts, not conclusions of law, may be deemed admitted when unopposed.

[4] The Court finds only the facts necessary to determine the insurance coverage issue between MAPFRE and TSL.

COSTCO Transportation Service Provider Agreement ("COSTCO Contract"), ECF No. 53-2.  MAPFRE is a domestic insurance carrier based in Puerto Rico.  Compl. ¶ 2.6; MAPFRE Ans. ¶ 2.6, ECF No. 23.  MAPFRE issued two insurance policies to TSL relevant to TSL's services to COSTCO: (1) the Motor Truck Coverage Form of the Commercial General Liability Policy, Commercial General Liability No. CBP-008874144-6/000 ("the CGL Policy"), MAPFRE Suppl. Mem., ECF No. 42-2; and (2) the Umbrella Policy, Business Protector Occurrence Excess Policy No. CLX-0045979/1912168000471, MAPFRE SOF ¶ 3; MAPFRE SOF, Ex. 2, Business Protector Occurrence Excess Policy No. CLX-0045979/1912168000471 ("the Umbrella Policy"), ECF No. 39-2, with missing pages supplemented by TSL at ECF No. 53-1.

**B.   The Incident of Loss**

On November 22, 2016, two shipping containers in TSL's custody bound for a COSTCO store in Caguas, Puerto Rico, were parked by TSL's subcontractors overnight at a parcel of land belonging to "Rosario Transport" in Caguas ("the Rosario Lot"). MAPFRE SOF ¶ 14.  The two containers were stolen at some point on the evening of November 22, 2016 or November 23, 2016 ("the Loss").  MAPFRE SOF ¶ 6.

C.   **The MAPFRE Insurance, TSL Claims and MAPFRE Denials of Coverage**

TSL filed a claim for the Loss with MAPFRE through its broker on December 21, 2016.  MAPFRE SOF ¶ 7.  On January 11, 2017, while the claim was pending with MAPFRE, TSL paid COSTCO $239,932.54, the undisputed liquidated amount of the claim, without MAPFRE's consent.  MAPFRE SOF ¶ 9.

On February 3, 2017, MAPFRE denied coverage under the CGL Policy because, among other reasons, the containers had been stored on the Rosario Lot which was excluded from coverage. MAPFRE SOF ¶ 11; Letter from MAPFRE to TSL (Feb. 2, 2017), ECF No. 77-1.  TSL's insurance broker then transferred the claim to the Umbrella Policy.  See MAPFRE SOF ¶ 12; Letter from Miguel Donato to Josue Cruz Robles (Feb. 16, 2017), ECF No. 43-1.

On March 2, 2017, MAPFRE denied TSL's claim under the Umbrella Policy pursuant to, among other reasons, provisions under Section 5 of that policy because of TSL's payment to COSTCO.  See MAPFRE SOF ¶ 12; Letter from MAPFRE to TSL (Mar. 2, 2017), ECF 77-2.

IV.  **RULINGS OF LAW**

In applying the law to the facts, this Court must resolve two narrow legal issues: (1) whether TSL is covered under the CGL Policy because the location of the containers was purportedly excluded from coverage, or if, and only if, there is

no coverage under the CGL Policy, then; (2) whether there is coverage under the Umbrella Policy in light of TSL's payment to COSTCO in the amount of the Loss without MAPFRE's consent.  The Court addresses these questions seriatim below.

A.   **Puerto Rico Insurance Law**

Under Puerto Rico law, "insurance contracts generally are viewed as adhesion contracts . . . requiring liberal construction in favor of the insured."  Lopez & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 64–65 (1st Cir. 2012) (citing Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of P.R., Inc., 167 F.3d 1, 7 (1st Cir. 1999)).  As the First Circuit teaches, this Court "must first turn to the Insurance Code of Puerto Rico ("'Insurance Code'") as [its] guide on the path to interpreting the underlying insurance contract."  Id. at 64 (citing P.R. Laws Ann. tit. 26, § 101 et seq).  Under the Insurance Code, "every insurance contract 'shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached to and made a part of the policy.'"  Id. (quoting P.R. Laws Ann. tit. 26, § 1125).  The Puerto Rico Civil Code is appropriate as a supplemental source of law where the Insurance Code does not provide guidance.  Id.  The long and the short of it is, "where a contract's wording is explicit and its language unambiguous,

[ 6 ]

the parties are bound by its clearly stated terms and conditions, with no room for further debate." Id. Indeed, while "[a]mbiguities should . . . be resolved in the manner least favorable to the insurer . . . this praxis does not compel or require courts to interpret a clear, unambiguous clause that favors the insurer in a manner that would benefit the insured." Metlife Cap. Corp. v. Westchester Fire Ins. Co., 224 F. Supp. 2d 374, 382 (D.P.R. 2002) (Laffitte, J.). "When the Insurance Code is silent on an issue, the Puerto Rico Supreme Court looks elsewhere to decide the case, and uses the most advanced rules in North American law and civil law." García-Navarro v. Hogar La Bella Unión, Inc., 17-cv-01271-JAW, 2020 WL 7052942, at *11 (D.P.R. 2020) (Woodcock, J.).

When determining coverage under Puerto Rico law, "the insured bears the burden of establishing coverage under an insurance policy, and . . . [where] . . . an exception to an exclusion creates coverage where it would otherwise not exist, the insured must also prove that the exception affords coverage after an exclusion is triggered." Nahan v. Pan Am. Grain Mfg. Co., Inc., 62 F. Supp. 2d 419, 424 (D.P.R. 1999) (Dominguez, J.) (citation and quotation omitted).

**B.    Section A.3.e of the CGL Policy Bars Coverage for TSL Because the Rosario Lot was Excluded.**

MAPFRE argues that coverage should be denied under the CGL Policy because the Rosario Lot is an excluded "terminal[], warehouse[], garage[], spotting area[], transfer point[], or other similar place[] of storage or deposit" that was not identified on a declaration schedule.  Suppl. Mot. 2; CGL Policy § A.3.e, ECF No. 42-2; CGL Policy Renewal Decl. 1, ECF No. 42-2.  TSL counters that it is covered under the CGL Policy because, among other things, the Rosario Lot was not a "similar place of storage or deposit," the policy language requires it to be covered, or, at the very least, that the phrase is ambiguous.  Opp'n ¶¶ 3.15 - 3.18.  Although TSL claims that MAPFRE has the burden as to whether a policy exclusion applies, TSL bears the burden where, as here, an exception to an exclusion creates the coverage.  See Nahan, 62 F. Supp. 2d at 424.  Regardless, the facts are undisputed and this issue is an issue of law.

The Court rules that there is no coverage for the Loss under the CGL Policy.  The language of the CGL Policy is unambiguous as to the meaning of "similar places of storage or deposit."  The parties have not cited any cases that interpret this phrase, and the Court has not located any such cases.  Nevertheless, reading this language "according to its common and general usage," Lorenzo v. Perfect Cleaning Servs., Inc., CIVIL

NO. 15-1301 (JAG), 2016 WL 11681300, at *3 (D.P.R. 2016)

(García-Gregory, J.); In re Reinforced Earth, Co., 925 F. Supp.

913, 918 n.21 (D.P.R. 1996) (Domínguez, J.), as is the well-

established law of Puerto Rico, the phrase underscores the

breadth of the antecedent words in the phrase.  Indeed, the

listed types of storage areas encompass every sort of storage

area, both long- and short- term, covered and uncovered, used

for storage, deposit, or transfer.  CGL Policy § A.3.e.  TSL

argues a hypothetical that:

> if the containers at issue herein were parked on the
> road, a gas station, or COSTCO's parking area, the
> containers and their contents would be considered
> Covered Property under MAPFRE's Motor Truck Cargo
> Form.  It is only if the property is located at a
> place that meets the list included in paragraph
> A.3.e., that it would be considered Property Not
> Covered under such policy.

Opp'n ¶ 3.16.  Without ruling on TSL's hypothetical, that

scenario is not the fact situation before the Court.  Rather,

the containers were placed overnight and unattended at the

Rosario Lot that was not on any schedule.  TSL also argues,

nonetheless, that "[i]t is reasonable to surmise that TSL

reasonably expected that the risks associated with temporarily

leaving a trailer in an unforeseen place (because the driver

made an unauthorized stop or decided to arrange its route in a

more convenient way) would be covered under this type [of]

policy."  Opp'n ¶ 3.21.  In this Court's view, however, this is

[9]

not at all what occurred here.  Rather, the exclusion is to prevent an insurer from being liable for exactly what did occur: the cargo was placed, stored, or deposited overnight at the Rosario Lot (which TSL characterizes, and MAPFRE does not dispute, as a "yard", TSL SAUF ¶ 3), a fact of which MAPFRE was not aware and thus could not have charged a premium to insure against.  In the context of these facts, the Rosario Lot is a yard which is a "place of storage or deposit" similar to a "garage," except it is open-air rather than covered.  If the Rosario Lot in this context is not included, then the phrase "similar places of storage or deposit" is meaningless.  See LIG Ins. Co. Ltd. v. Inter-Fla. Container Transp., Inc., No. 12-20990-CIV, 2013 WL 4516104, at *1 (S.D. Fla. 2013) (referring to area as "storage yard" where three trucks parked overnight resulting in two trucks and contents of third container stolen prior to delivery); Atlantic Mut. Ins. Co. v. Yasutomi Warehousing & Distrib., Inc., 326 F. Supp. 2d 1123, 1125 (C.D. Cal. 2004) (insurer subrogated to shipper where it stored container that was stolen in its yard overnight because it could not make delivery the same day).  TSL's alternative arguments -- reasonable interpretation, the absence of specific references to a schedule in the renewal declaration, and ambiguity -- are unpersuasive.  Accordingly, on this record, under the plain meaning of the CGL Policy, there is no coverage for the Loss

under Section A.3.e.  The Court need not, and does not, reach
other arguments presented by MAPFRE on the issue of coverage
under the CGL Policy.

**C.   Section 5 of the Umbrella Policy does not Bar Coverage
Because TSL's Payment Caused no Prejudice to MAPFRE.**

The Court next turns to the Umbrella Policy, which applies
because, as the Court has ruled, there is no coverage under the
CGL Policy.  See Umbrella Policy § 1.a.(3)(a) (noting that the
Umbrella Policy does not apply where the "underlying insurance"
does).[5]  MAPFRE argues that denial of coverage was justified
under the Umbrella Policy based upon TSL's payment to COSTCO
without MAPFRE's consent.  Mot. 9-10 (citing Mid-Continent Cas.
Co. v. Am. Pride Bldg. Co., LLC, 601 F.3d 1143, 1150 (11th Cir.
2010) (interpreting Florida law); Zurich Am. Ins. Co. v. Frankel
Enters., 287 F. App'x. 775 (11th Cir. 2008) (same); United
States Fire Ins. Co. v. Freedom Vill. of Sun City Ctr., Ltd.,

---

[5] "Insurers providing excess coverage may offer 'umbrella
policies' that differ from standard excess policies 'in that
they are designed to fill gaps in coverage both vertically (by
providing excess coverage) and horizontally (by providing
primary coverage).'"  Metlife Cap. Corp., 224 F. Supp. 2d at
382-83 (quoting Commercial Union Ins. v. Walbrook Ins. Co., 7
F.3d 1047, 1053 (1st Cir. 1993)).  In particular, "[t]he
vertical coverage provides additional coverage above the limits
covered by all underlying insurance, whereas the horizontal
coverage serves as a gap filler that 'drops down' to provide
primary coverage for situations or occurrence not covered at all
by the underlying insurance." Id. at 383 (citing American
Special Risk Ins. Co. v. A-Best Prods., Inc., 975 F. Supp. 1019,
1022 (N.D. Ohio 1997)).

[11]

279 F. App'x. 879 (11th Cir. 2008) (same); Hathaway Dev. Co. v.

Ill. Union Ins. Co., 274 F. App'x 787 (11th Cir. 2008)

(interpreting Georgia law)).  Specifically, MAPFRE argues that

TSL's payment violated three provisions of Section 5 of the

Umbrella Policy because TSL: (1) failed to cooperate with the

investigation, (2) assumed an obligation by making voluntary

payments, and (3) jeopardized MAPFRE's rights.  Id.  Section

V.5. of the Umbrella Policy sets forth that TSL's post-loss

obligations included in relevant part:

> c.   You and any other insured involved in such
>      "claim" or "suit" must:
> …
>      (3)  Cooperate with [MAPFRE] in the
>           investigation, or settlement of the "claim"
>           or defense against the "suit". . . .
>
> d.   No insured will, except at the insured's own
>      cost, voluntarily make payment, assume any
>      obligation, or incur any expense without
>      [MAPFRE's] consent.
>
> e.   No insureds shall in any way jeopardize our
>      rights after an "occurrence" or "offense".

Umbrella Policy § V.5.; see also id. 10 (stating that MAPFRE has

"no duty to provide coverage unless there has been full

compliance with all the conditions – Section V – of this policy"

(capitalization omitted)).

It is established beyond peradventure that under "Puerto

Rican case law . . . the insured's failure to comply with a

condition of the policy requiring cooperation with the insurer,

absent prejudice, does not release the insurer from liability."
Municipality of San Juan v. Great Am. Ins. Co., 17 P.R. Offic.
Trans. 757, 762 (P.R. 1986).  To underscore the state of Puerto
Rico law, the Puerto Rico Supreme Court further stated, "[o]ur
pronouncements up to now have established that in order to
sidestep its liability under policy coverage the insurer must
show prejudice."  Id.[6]  Thus, to the extent a failure to
cooperate is shown, MAPFRE must demonstrate prejudice before
being relieved of its obligations under the Umbrella Policy
based upon the cooperation clause.

Under the voluntary payment/obligation provision, whether a
showing of prejudice is required, and by whom, is a matter of
first impression in Puerto Rico.  As the First Circuit observes,
it would be error for this Court to deem the "absence of an on-
point opinion from the state's highest court dispositive."
Butler v. Balolia, 736 F.3d 609, 612–13 (1st Cir. 2013).
Instead, the First Circuit is clear that this Court has an
obligation to predict how the Puerto Rico Supreme Court would
rule:

If such a lacuna exists, a federal court sitting
in diversity should not simply throw up its hands but,

---

[6]  TSL cites to Rodríguez v. Integrand Assurance Company,
Slip. Op., Case No. CC-2014-826 (Sept. 9, 2016), a case that is
not translated into the English language, and therefore this
Court does not consider or rely on the case.  Puerto Ricans for
Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008);
see Opp'n ¶ 3.9.

[13]

> rather, should endeavor to predict how that court
> would likely decide the question.  See, e.g., In re
> Bos. Reg'l Med. Ctr., Inc., 410 F.3d 100, 108 (1st
> Cir. 2005).
>
> In fashioning such a prediction, the federal
> court should consult the types of sources that the
> state's highest court would be apt to consult,
> including analogous opinions of that court, decisions
> of lower courts in the state, precedents and trends in
> other jurisdictions, learned treatises, and
> considerations of sound public policy.  See Andrew
> Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547
> F.3d 48, 51–52 (1st Cir. 2008) . . . . The goal is to
> replicate, as well as possible, the decision that the
> state's highest court would be likely to reach.

Id.  As the First Circuit has pointed out, when predicting how

the Puerto Rico Supreme Court would rule, "[o]urs is an educated

prediction (we are not in the same predicament as the

philosopher who compared his calling to searching in a dark room

for a black cat that is not there), but it is a prediction still

the same."  Candelario Del Moral v. UBS Fin. Servs. Inc. of

P.R., 699 F.3d 93, 105 (1st Cir. 2012).

Of course, Puerto Rico's law comes from a civil code

system, rather than a common law system; however, with respect

to insurance contract interpretation, the practice of the

Supreme Court of Puerto Rico "has been to use the most advanced

rules in North American law and civil law."  Municipality of San

Juan, 17 P.R. Offic. Trans. at 762.  Still, in this context, the

Puerto Rico Supreme Court has cautioned the First Circuit that

"we must highlight the fact that [Puerto Rico's] insurance rules

[14]

come from different law systems." Id.  The Court takes this
admonition seriously.

    As to North American law –- at least in the United States -
- the states are unsurprisingly split as to whether prejudice
must be shown with respect to voluntary payment/obligation
provisions.[7]  For example, in New England Extrusion, Inc. v.
American Alliance Insurance Co., the court, interpreting
Massachusetts law, held that prejudice must be shown by the
insurer in the context of voluntary settlement, and denied an
insurer's motion for summary judgment:

> [U]nder Massachusetts law, [the insurer] is
> required to show material prejudice to its position in
> order to be relieved of liability under the insurance
> contract as a result of [the insured's] breach of the
> policy's notice and voluntary settlement provisions.
> In fact, [the insurer] does not even claim any such
> prejudice to its position in support of its disclaimer
> of liability under the policy.  Obviously, [the
> insurer] has therefore not sustained its burden under
> the applicable caselaw.
>
>     Further, even when viewing the facts in the light
> most favorable to the [insurer], no such prejudice
> could be claimed by [the insurer].  [The insurer] does
> not dispute the fact that [the third party] suffered
> damages as a result of the defective [insured's] film,
> nor does it claim that [the insured's] policy would
> deny coverage for such a claim.  [The insured's]
> settlement of [the third party's] well-documented and

---

[7] The Court recognizes that the United States of America is,
of course, but one country in North America; however, because
(1) the Umbrella Policy is similar to policies drafted in, and
construed under, the laws of States within the United States of
America, and (2) the law of Puerto Rico or the United States of
America answers the questions presented, it is unnecessary to
review the law of each country in North America.

> authentic claim, therefore, did not materially
> prejudice [the insurer's] position or frustrate the
> fundamental purposes of . . . voluntary payment
> provision[] of the policy.

874 F. Supp. 467, 471 (D. Mass. 1995) (Ponsor, J.) (emphasis in
original).  As a further observation, that court noted that "it
would have been grossly unfair to plaintiff to require it to
delay resolution of the claim and jeopardize its relationship
with an important customer to satisfy a technicality in the
policy with no risk of prejudice to the insurer."  Id. at 471
n.1.  In essence, the purpose of the provision is to protect the
insurer, and when the insurer is protected, the insurer cannot
use a voluntary payment provision as a basis to disclaim an
otherwise valid claim:

> The purpose behind notice and consent-to-
> settlement provisions is to enable the insurer to
> protect its interests. . . . Such provisions protect
> an insurer from being placed in a substantially less
> favorable position ... by forcing it to pay a claim
> against which it hasn't had an opportunity to defend
> effectively. . . Where, however, an insured's breach
> of a policy provision has not frustrated the
> underlying purpose of the provision, the insurer
> cannot be permitted to disclaim coverage. . .  In
> other words, in order to deny coverage to an insured
> on the grounds that it has breached the voluntary
> payment and notice provisions of its policy, an
> insurer must show that the insured's breach seriously
> impaired the insurance company's investigation or
> defense of the action, thereby prejudicing its
> interest in avoiding payment on claims that it cannot
> then adequately defend.

Id. at 470 (citations omitted and emphasis added).  Other courts
have similarly held.  See, e.g., Lennar Corp. v. Markel Am. Ins.

Co., 413 S.W.3d 750, 756 (Tex. 2013); Hiland Partners Holdings, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, 475 P.3d 869, 877 (Okla. Civ. App. 2020) (interpreting similar policy language, noting split, and holding on matter of first impression that "an insurer is required to show prejudice when it asserts an insured has breached the voluntary payments clause"); Cessna Aircraft Co. v. Hartford Accident & Indem. Co., 900 F. Supp. 1489, 1518 (D. Kan. 1995) (Lungstrum, J.) ("By requiring a showing of prejudice with regard to policy notice and cooperation provisions, even where there has been a material breach of those obligations and conditions precedent to coverage, Kansas appears to have, at least implicitly, recognized the essence of the bargain in a general liability policy as an exchange of a promise to pay in return for premiums, and that other promises (such as the promise to cooperate, not to incur costs or to settle without approval) do not necessarily go directly to the heart of the exchange.  The court does not believe that Kansas would literally enforce so-called voluntary payment provisions and no settlement provisions where, as in this case, to do so would unfairly permit forfeiture and result in a windfall to the insured."); Axis Surplus Ins. Co. v. James River Ins. Co., 635 F. Supp. 2d 1214, 1218-19 (W.D. Wash. 2009) ("[C]ourts have repeatedly held that an insured's breach of the duty . . . to refrain from voluntary

[17]

payments . . . is no basis for denying coverage, unless the
insurer can prove actual and substantial prejudice arising from
the breach.  This basic principle of Washington insurance law
should come as no surprise . . . ."); Public Util. Dist. No. 1
v. Int'l Ins. Co., 881 P.2d 1020, 1028 (Wash. 1994) ("Much like
cooperation and notice clauses, a no settlement clause contains
a condition the insured must fulfill to create the insurer's
obligation to pay under the policy.  Such conditions designate
the manner in which claims covered by the policy are to be
handled once a claim has been made or events giving rise to a
claim have occurred.  They are clearly placed in policies to
prevent the insurer from being prejudiced by the insured's
actions.  To release an insurer from its obligations without a
showing of actual prejudice would be to authorize a possible
windfall for the insurers."); Duke Energy Carolinas, LLC v. AG
Ins. SA/NV, 2018 WL 2707827, at *10 (N.C. Super. Ct. June 5,
2018) ("North Carolina courts favor finding coverage and appear
to require a showing of prejudice when a lack of consent is
asserted as grounds for denying coverage."); see also 2 New
Appleman Insurance Law Practice Guide § 24.17 (2020) ("However,
an insured's paying in contemplation of the reasonable prospect
of liability may not be considered to be a 'voluntary payment'
such that the insurer can refuse to perform unless the insurer
can show it was otherwise prejudiced.") (citing Roberts Oil Co.

[18]

v. Transamerica Ins. Co., 833 P.2d 222, 229 (N.M. 1992) (holding that "we do not believe that the policy considerations underlying a voluntary payment provision differ significantly from the policy considerations underlying a cooperation clause"))). To be sure, there is caselaw that holds the exact opposite. See Travelers Prop. Cas. Co. of Am. v. Stresscon Corp., 370 P.3d 140, 143 (Colo. 2016); 1 New Appleman on Insurance Law Library Edition § 16A.03 (2020) (rejecting the notion of a prejudice requirement in voluntary payment clauses relying on the Restatement of the Law of Liability Insurance and criticizing Roberts Oil Co. as "unusually strong" and an "extravagant version of the reasonable expectations doctrine").

Facing a similar legal vacuum in Mississippi, Adjunct Professor Troy Farrell Odom and Assistant Professor of Law and Ethics Robert Louis Perkins (a former Senior Attorney for the Mississippi Department of Insurance), recently summed up the competing policy positions at work here, concluding that forfeiture of the policy should occur only upon demonstration of prejudice:

> The voluntary payment provision of the standard form insurance contract supplies distinct considerations to the contracting parties. However, these considerations conflict when they attempt to protect two separate interests. For the insurer, that interest is one in preventing collusion and allowing the insurer to be the controlling force in settlement negotiations. For the insured party, the interest protected by the voluntary payment provision goes to

the heart of the contract itself -- indemnification
and defense.  When the interests of the insurer have
not been materially prejudiced, there is no need to
allow a forfeiture of costs to the detriment of the
insured party.

Troy Farrell Odom & Robert Louis Perkins, Public Policy Should
Trump Forfeiture in Absence of Prejudice to Insurer, 85 Miss.
L.J. 1611, 1647 (2017).  These commentators persuasively
explain:

> Public policy . . . demands the insurance
> contract be upheld so as to effectuate the intent of
> the contracting parties. . . .  [T]o deny an insured
> the expectation of their bargain because of a . . .
> voluntary payment prior to formal tender (that could
> possibly work to the advantage of the insurer), would
> be contrary to the public policy of this State, and
> strict compliance with the provision should be
> unnecessary unless shown to be prejudicial to the
> interests of the insurer. . . .
>
> Whether an insurer designates a voluntary payment
> provision as a condition precedent or as a less
> stringent contractual covenant, there should be no
> difference in applying the prejudice rule to the
> insurance contract.  Insurers frequently argue their
> duty to provide a defense is contingent upon the
> timely notification to them of the accident by the
> insured party.  Insurers rely on this argument because
> of their interest in interpreting these provisions as
> conditions precedent, rather than non-binding
> covenants.  A majority of jurisdictions require a
> showing of prejudice when an insurer argues a delay in
> notification or absence of cooperation.  Thus, whether
> or not these provisions are labeled as "conditions
> precedent" has been largely discounted by the courts
> of other states.  This is so because a genuine
> condition precedent excuses performance immediately
> and mechanically when breached.
>
> A voluntary payment provision is no different,
> contractually, from a notification or cooperation
> provision.  In states requiring a showing of

> prejudice, these three clauses should all be reviewed
> under the assumption that their application will
> further the purposes for which they were included in
> the insurance contract.  When this purpose is not met,
> forfeiture should only be granted when the insurer
> demonstrates adequate prejudice.

Id. at 1616, 1638-40.  Mississippi has yet to resolve the issue. This Court, however, is persuaded that this rationale is entirely consonant with Puerto Rico law, and that, if faced with this question, the Puerto Rico Supreme Court would require an insurer to demonstrate prejudice to avoid coverage under a voluntary payment provision, similar to the showing required under a cooperation provision.  Indeed, where the interests of an insurer remain intact, post-loss provisions (whether considered conditions precedent or covenants in what Puerto Rico views as contracts of adhesion) become nothing more than trip-wire technicalities that are incongruent with fundamental precepts of Puerto Rico law, and would act to permit an insurer to avoid coverage "due to unfounded reasons."  See Municipality of San Juan, 17 P.R. Offic. Trans. at 764.

Applying the predicted law of Puerto Rico here, MAPFRE cannot avoid coverage under the voluntary payment provision of the Umbrella Policy.[8]  MAPFRE claims that TSL's undisputed payment to COSTCO for the Loss violates the voluntary payment

---

[8] In the Motion and at the hearing, the parties narrowed the issue of coverage as to Section V.5. of the Umbrella Policy.

provision and jeopardized its rights.  MAPFRE has the burden under Puerto Rico law to demonstrate prejudice under a cooperation clause, and the Court is convinced that the Puerto Rico Supreme Court would place the same burden on MAPFRE in the context of a voluntary payment.  See Municipality of San Juan, 17 P.R. Offic. Trans. at 764.  Prejudice is not satisfied, however, through MAPFRE's metaphysical claims of interference with its investigation and its rights that amount to nothing more than tautological claims of prejudice.  There is simply no evidence that MAPFRE has been materially prejudiced at all in its ability to investigate, defend or recoup the Loss from others.  The Loss here is a liquidated amount based upon invoices of the cargo and taxes computed therefrom.[9]  The Court pressed MAPFRE's counsel on the issue of prejudice to MAPFRE's subrogation rights at the hearing -- the Court could discern no impediments -- and MAPFRE's counsel responded that the Court might be right, but, nonetheless, stood on the materiality of the provisions of the Umbrella Policy.  This is not, however, the law of Puerto Rico as predicted by this Court.  As there is

---

[9] The Court notes that it does not have the invoices as part of the record, but this appears to be because the parties do not genuinely dispute the underlying issue of the nature or amount of the claim, or whether the claim is covered by the Umbrella Policy, except for the issues argued in the Motion.  See SOF ¶ 9 ("TSL paid COSTCO the amount of $239,932.54 on January 11, 2017 to cover the loss of containers STRU832913 and STRU8810479 without MAPFRE's consent.").

no prejudice, the Court also rules that, in addition to the voluntary payment clause, TSL similarly did not "jeopardize" MAPFRE's rights under the Umbrella Policy.

The Court need go no further to decide this issue, but merely observes that, similar to New England Extrusion, Inc., there is evidence in the record that payment of this undisputed liability was made to prevent profound damage to TSL's business. See 874 F. Supp. at 471 n.1. Specifically, under questioning by MAPFRE's counsel at TSL's Federal Rule of Civil Procedure 30(b)(6) deposition, TSL, through its corporate representative, testified:

> I was under a great deal of pressure from [COSTCO]. I was preserving a business relationship, trying to preserve a business. I was being threatened via email and verbally that I had to make the payment and rather quickly. And the requests were becoming more and more constant. So it got to a point where I knew that in order to keep the client, who is my largest client, 80 percent of my business, I had to make that payment.

TSL Dep., ECF No. 46-1, 29-30.[10] Just as Judge Ponsor observed in New England Extrusion, Inc., "it would have been grossly unfair to [the insured] to require it to delay resolution of the claim and jeopardize its relationship with an important customer to satisfy a technicality in the policy with no risk of

---

[10] The Court recognizes this deposition transcript was not submitted in support or opposition to MAPFRE's motion; nevertheless, it is part of the record in this case.

prejudice to the insurer." See 874 F. Supp. at 471 n.1.  The
Court recognizes, of course, that, had MAPFRE been able to
demonstrate prejudice, the business reason for TSL's payment
would not save the day for TSL -- at least from a prejudice
perspective.[11]  The apparent reason TSL chose to make reparations
to its biggest client as to what it believed was an undisputed
and indisputable loss was to preserve that relationship, and, by
extension, its own business.  These facts are not necessary to
decide the issue, but merely illustrate the hard business
realities that undergird "considerations of sound public policy"
that this Court rules would also be persuasive to the Puerto
Rico Supreme Court.  See Butler, 736 F.3d at 613.

MAPFRE's declination of coverage under Section V.5. of the
Umbrella Policy is incorrect as matter of law under the
predicted law of Puerto Rico.  Under that prediction, and on
this record, TSL is covered by the Umbrella Policy.  The Court
need not and does not reach TSL's other defenses to its act of
payment.

## V.   CONCLUSION

For these reasons, on the stipulated record before it, the
Court finds and rules that, with respect to the Loss: (1) MAPFRE

---

[11] The Court presumes arguendo, but without ruling, that the
payments otherwise were in breach of the voluntary payment
clause.

is <u>not</u> liable for coverage under the CGL Policy; and (2) MAPFRE
<u>is</u> liable for coverage under the Umbrella Policy.  Of course, as
to the requirement of prejudice under the Umbrella Policy, this
Court is merely predicting what the Supreme Court of Puerto Rico
would hold.  Certification of the issue to the Supreme Court of
Puerto Rico does not appear appropriate where the issue of
prejudice is not outcome determinative to the entire case, but
rather only the issue of coverage as to MAPFRE, but the Court is
willing to entertain a motion to certify this issue to the
Supreme Court of Puerto Rico if, but only if, all of the parties
agree to be bound by the decision of the Supreme Court of Puerto
Rico if the issue is accepted for certification, and not appeal
that issue to the First Circuit.[12]

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[12] This Court may certify the question of prejudice to the
Supreme Court of Puerto Rico only if "(1) the controversy
involves questions of Puerto Rican law; (2) said questions may
determine the outcome of the case; (3) there are no clear-cut
precedents in [the Supreme Court of Puerto Rico's] case law; and
(4) the case [sic] makes an account of all the facts relevant to
said questions showing clearly the nature of the controversy
giving rise to the questions."  <u>In re Fin. Oversight & Mgmt. Bd.</u>
<u>for P.R.</u>, 586 B.R. 811, 813 (D.P.R. 2018) (citing <u>Cuesnongle</u> v.
<u>Ramos</u>, 835 F.2d 1486, 1491 (1st Cir. 1987)).

[25]